IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER D. DYCUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-00727-KD-N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff Jennifer D. Dycus filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that she was not entitled to disability insurance benefits under Title II of the Social Security Act (the Act). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  A hearing was held on September 3, 2009 before the undersigned Magistrate Judge.  Present were Byron Lassister, Esq., counsel for the plaintiff and AUSA Patricia Beyer, counsel for defendant.  Upon consideration of the arguments of counsel, the administrative record (Doc. 18), as supplemented (Doc. 22-2) and the parties' respective briefs (Docs. 27, 28), it is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

I.    Procedural History.

Plaintiff filed an application for disability insurance benefits on June 13, 2007 (Tr.

113-114), claiming an onset of disability as of September 4, 2005 (Tr. 113).  Her

application was denied initially on July 6, 2006.  (Tr. 86-90).  Plaintiff requested a

hearing on August 4, 2006.  (Tr. 91).  Following an administrative hearing on December

14, 2007 (Tr. 41-83), the Administrative Law Judge ("ALJ") issued an unfavorable

decision (Tr. 27-41) in which he found that Plaintiff retained the residual functional

capacity ("RFC") to perform unskilled medium work with the following nonexertional

limitations : only occasional interaction with the general public and co-workers (Tr. 36-

37).  In his decision, the ALJ found that Plaintiff has the following severe combination of

impairments: gastroesophageal reflux disease and depression (Tr. 29).  The ALJ also

noted that Plaintiff's affective disorder (depression) resulted in mild restrictions of daily

living activities, moderate difficulties in social functioning and concentration, and no

episodes of decompensation (Tr. 36).  The ALJ determined, at the fourth step of the

sequential evaluation process, that Plaintiff is unable to perform any of her past relevant

work (Tr. 39).  The ALJ found, however, based upon vocational expert testimony, that

there are other jobs existing in significant numbers in the national economy which

Plaintiff can perform (Tr. 40).  Accordingly, the ALJ concluded, at the fifth step, that

Plaintiff is not disabled (Tr. 41).  Plaintiff requested review by the Appeals Council on

January 14, 2008 (Tr. 22-23), which was denied on October 28, 2008 (Tr. 1-3), thereby

making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. §

404.981 (2008).[1]

II.     Issues on Appeal.

1.      Whether the ALJ erred in not finding that Plaintiff's irritable bowel syndrome and morbid obesity constitute severe impairments.

2.      Whether the ALJ erred in finding that Plaintiff retains the residual functional capacity to perform medium work.

3.      Whether the ALJ erred in assigning determinative weight to the opinion of a non-examining state agency physician with respect to the determination of Plaintiff's mental residual functional capacity.

III.    Findings of Fact and Conclusions of Law.

A.      Background.

Plaintiff was born on January 26, 1972.  (Tr. 49).  She was 35 years of age at the time of the administrative hearing on December 14, 2007.  _Id._  Plaintiff has a Bachelor's degree (Tr. 44)[2] and past work experience as a psychiatric assistant, resident advisor, waitress and behavioral specialist (Tr. 68-69).  The record reflects that plaintiff last worked in September 2005 in the position of psychiatric assistant.  (Tr. 176)

B.      Relevant Medical Evidence.

Plaintiff does not challenge the ALJ's summary of the medical evidence proffered

---

[1]  All references to the Code of Federal Regulations (C.F.R.) are to the 2008 edition.

[2]  The record also reflects that plaintiff has received twelve (12) credits towards her Masters Degree. (Tr. 74)

during the administrative hearing.  Plaintiff's evidence establishes that she was admitted to the Mobile Infirmary hospital on August 11, 2005 by N. Brice Whetstone, MD for further evaluation and treatment of a cellulitis of the abdominal wall. (Tr. 30, 186). Plaintiff rapidly improved over five day period and was discharged in stable condition on oral antibiotics.  (Tr. 30).   According to Dr. Whetstone's notation on August 23, 2005, Plaintiff was much improved; she seemed well; her cellulitis had resolved; her physical examination was essentially normal; and she was alert and appropriate.  (Tr. 30).

On September 10, 2005, Plaintiff presented in the emergency room with complaints of abdominal pain (Tr. 30, 204-12).  She was diagnosed with a bladder infection and discharged with a prescription for Levaquin.  *Id*.  On the following day, Plaintiff was admitted to the hospital for abdominal pain to rule out appendicitis. (Tr. 30, 214).  Plaintiff was treated for an infection which was considered to be a non-surgical matter and had steady improvement of her gastroenteritis symptoms and abdominal pain during her hospital stay.  *Id*.   She was discharged in stable condition with a diagnosis of enteritis (inflammation of the intestines) related abdominal pain.  *Id*.   At her follow-up appointment on September 19, 2005, Plaintiff was observed to be much better and in no pain.  (Tr. 30, 224).

On November 23, 2005, Plaintiff was seen by Joseph Sejud, MD to whom she complained about "intermittent right upper quadrant pain associated with eating accompanied by nausea and vomiting."  (Tr. 30, 238).  She denied, *inter alia*, diarrhea, fever or shortness of breath.  (Tr. 238).  Dr. Sejud concluded that "[Plaintiff's]

4

constellation of symptoms is most consistent with gallbladder disease" and scheduled her for a gallbladder ultrasound, which "revealed fatty infiltration of the liver, normal gallbladder, and normal bile ducts."  (Tr. 30, 237-38).  An examination of the kidneys, ureters and bladder (KUB) showed "impacted stool in the ascending transverse, and descending colon" which resulted in a diagnosis of constipation for which Plaintiff was prescribed magnesium citrate and milk of magnesia.  *Id.*

On December 16, 2005, Plaintiff was seen by Allen Perkins, MD for nausea and abdominal pain.  (Tr. 30, 236).  Plaintiff denied at that time vomiting, diarrhea or fever. *Id.*  Another KUB revealed "profound fecal impaction" for which she was prescribed colace (stool softener) and "a Miralax flush of three doses . . . in short succession."  *Id.*

During a follow-up visit with Dr. Sejud on December 28, 2005, Plaintiff was referred for gastrointestinal (GI) evaluation and urged to see her gynecologist for possible laparoscopy to treat possible endometriosis.  (Tr. 30, 235).   On January 3, 2006, Plaintiff presented to Kevin Olden, MD, for a GI evaluation. (Tr. 31, 313).  Despite the previous negative ultrasound, Dr. Olden strongly suspected gallbladder dysfunction.  *Id.*  Plaintiff underwent a nuclear medicine hepatobiliary scan on January 5, 2006 which revealed decreased gallbladder ejection fraction consistent with chronic cholecystitis (Tr. 31, 240-41).  On January 20, 2006, Plaintiff underwent a laparascopic cholecystectomy by Juvonda S. Hodge, MD without complication and was discharged home in stable condition.  (Tr. 31, 243).

On January 25, 2006, Plaintiff presented to the emergency room with complaints

of nausea and vomiting related to food and medications. (Tr. 31, 250). She was admitted for observation and biopsies were taken of her stomach which were positive for H-Pylori. *Id*. Plaintiff was treated for H-Pylori and, after tolerating a regular diet and obtaining control of the nausea and vomiting, was discharged on January 28, 2006 in stable condition and with a good prognosis. *Id*.

On March 3, 2006, Plaintiff returned to Dr. Olden whose progress notes indicate duodenal ulcers, epigastric abdominal pain and status post cholecystectomy. (Tr. 31, 311-12). On May 3, 2006, Plaintiff was seen by Andrew Brown, MD, for a GI follow-up appointment. (Tr. 31, 306). Dr. Brown listed his impression as irritable bowel syndrom ("IBS") which was constipation-predominant; nausea; abdominal pain; and anxiety. *Id*. Dr. Brown added Nortriptyline 100 mg each night to Plaintiff's medication regime and planned to have her undergo psychotherapy. *Id*. Dr. Brown also noted that Plaintiff had previously been prescribed Lexapro at a twice-daily 6 mg dose but discontinued it on her own because of nausea. *Id*. Dr. Brown restarted the Lexapro but at 3 mg daily to be titrated up to 6 mg twice daily as tolerated. *Id*.

On June 26, 2006, Plaintiff was evaluated by Lucile T. Williams, PsyD at the request of the state agency, the Division of Disability Determination. (Tr. 268). Plaintiff reported that her depression and anxiety began in 1992, but had remitted until March 2005. *Id*. Dr. Williams diagnosed Plaintiff's condition as posttraumatic stress disorder and panic disorder without agoraphobia. (Tr. 270). In Dr. Williams' opinion, "[i]t is likely that within the next six to twelve months [Plaintiff] will have a favorable response

to treatment including psychotherapy." *Id.*

During July 2006, M. Hope Jackson, Ph.D., a state agency psychologist, reviewed Plaintiff's records and completed a Psychiatric Review Technique form. (Tr. 271-84). Dr. Jackson determined that Plaintiff's mental impairments resulted in mild restrictions of daily living activities, moderate difficulties in maintaining social functioning and concentration, and no episodes of decompensation. (Tr. 281). Dr. Jackson also determined from her review of Plaintiff's records:

> The [Plaintiff] is able to care for her children, cook, clean, shop, do laundry and take the kids to the park. She watches tv and visits with friends and family. She is currently on a month long trip to Washington provided by her children's other grandparent's so that they can visit with the children.

(Tr. 283). Dr. Jackson also determined that Plaintiff was "able to attend for 2 hour periods" but that she should have only infrequent contact with the general public. (Tr. 295).

With respect to a follow-up appointment, Dr. Brown reported on August 15, 2006 that Plaintiff told him that she was "doing better at this time with the addition of Effexor." (Tr. 305). Consequently, Dr. Brown planned to continue the Effexor and the MiraLax, make no further medication changes and have Plaintiff return to the clinic in two months, or as needed. *Id.*

On August 29, 2006, Plaintiff went to Warren Tyon, M.D. with complaints of chronic abdominal pain and tiredness. (Tr. 332). Plaintiff reported that she was currently on Zelnorm, a medication which helped control her diarrhea and constipation from her

IBS, and that she was having daily bowel movements. *Id.* Plaintiff's concern at that visit was "excessive tiredness" which she attributed to sleep apnea "because her husband wakes her in the middle of the night when she stops breathing on several occasions." *Id*. Dr. Tyon's examination revealed that Plaintiff was stable and in no acute distress. *Id.* Dr. Tyon assessed chronic abdomen pain, nausea, tiredness and anxiety, but did not assess any functional limitations. *Id.* He again noted that Plaintiff's "pain is stable with no clear identification of source of pain." He then indicated that a sleep study referral was written for the Plaintiff that day and that he scheduled a one hour counseling session on September 7th about the distress and anxiety she experiences "upon remembering her abruption [complicated childbirth] in March of 2005." *Id*.

At a follow-up visit on September 21, 2006, Dr. Tyon reported that Plaintiff's IBS was stable. (Tr. 330). Dr. Tyon did not assess any functional limitations or restrictions. *Id.* A prescription for Zoloft was written and Plaintiff was scheduled to have another one hour counseling session with Dr. Tyon on October 10, 2006.

On October 9, 2006, at the apparent request of Plaintiff's counsel, Dr. Tyon completed a Physical Capacities Evaluation. (Tr. 317). The diagnosis upon which Dr. Tyon's opinion related was "Irritable Bowel Syndrome; Adhesions." *Id*. Dr. Tyon opined that these two conditions resulted in Plaintiff's ability to sit for two hours at a time but for only two hours in an eight hour day. *Id*. Similarly, Dr. Tyon opined that Plaintiff could stand for two hours at a time but could stand/walk combined for only two hours in an eight hour day. *Id*. Dr. Tyon also determined that Plaintiff could occasionally lift 21-

8

25 pounds and frequently lift 6-10 pounds.  *Id.*

Dr. Tyon also completed a Clinical Assessment of Pain form and a Residual Functioning Capacity Assessment form.  (Tr. 318-20).  Dr. Tyon opined that Plaintiff's pain was distracting to the adequate performance of work activities and that she had marked limitation in daily living activities, maintaining social functioning, and maintaining concentration.  (Tr. 319).  The diagnosis upon which Dr. Tyon's opinion regarding Plaintiff's Residual Functioning Capacity related was "Depression."  (Tr. 320).

On December 7, 2006, Dr. Tyon reported that Plaintiff's abdomen pain has been much improved since starting the Zoloft medication.  (Tr. 328).  Dr. Tyon described the Plaintiff as in no acute distress and alert.  *Id.*

At the next follow-up visit on May 15, 2007, Plaintiff complained to Dr. Tyon about depression but had no complaints of abdominal pain.  (Tr. 327).  Dr. Tyron noted that Plaintiff had been stable on 50 mg pf Zoloft until recently and that there had been no identifiable source for the depression she was then complaining about but that the Plaintiff requested more routine counseling sessions.  *Id.*  Consequently, Dr. Tyon planned to make no changes in the dosing of the Zoloft until Plaintiff completed the counseling session scheduled for May 23, 2007. *Id.*  Dr. Tyon also noted that Plaintiff continued to function as a housewife and in taking care of her three children with no new complaints and did not assess any functional limitations or restrictions.  *Id.*

On June 13, 2007, Dr. Tyon again reported that Plaintiff's IBS was stable and that she had no complaints of abdomen pain that day.  (Tr. 326).  Dr. Tyon also reported that

Plaintiff stays home and takes care of her two young children; he again assessed no functional limitations or restrictions.  *Id.*

On July 18, 2007, Plaintiff was evaluated by a new primary care physician, Maritere Rochet, MD.  (Tr. 322).  Plaintiff reported that her panic attacks were well controlled but that she is still feeling depressed and everything aggravates her.  *Id.* Plaintiff also complained of nausea, vomiting, and diarrhea.  *Id.*  Dr. Rochet assessed depression and increased Plaintiff's Zoloft from 50 mg to 100 mg daily.  *Id.*  Dr. Rochet also assesses nausea, diarrhea and vomiting.  *Id.*   At a follow-up visit to Dr. Rochet on August 24, 2007, Plaintiff reported that she was feeling great and was not as depressed as before.  (Tr. 321).  Plaintiff also reported that her vomiting and diarrhea had resolved. *Id.* In addition to depression and GERD (gastroesophageal reflux disease), Dr. Rochet assessed obesity[3] and noted that Plaintiff was interested in losing weight, even considering surgical intervention if covered by Medicaid.  *Id.*  As in all previous medical records of all Plaintiff's physicians, Dr. Rochet did not assess any functional limitation or restriction based on her diagnosis of Plaintiff's obesity. *Id.*

C.      Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were

---

[3]  The record reflects that Plaintiff is 5'6" in height and had a weight range of 266½ to 299 lbs.  (Tr. 15).

applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir.1990).  Thus, a court may not

decide the facts anew, reweigh the evidence, or substitute its judgment for that of the

Commissioner.   <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir.1986).  Rather, the

Commissioner's findings of fact must be affirmed if they are based upon substantial

evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir.1991); <u>Bloodsworth v.

Heckler</u>, 703 F.2d 1233, 1239 (11th Cir.1983) (finding that substantial evidence is

defined as "more than a scintilla but less than a preponderance," and consists of "such

relevant evidence as a reasonable person would accept as adequate to support a

conclusion[ ]"). In determining whether substantial evidence exists, a court must view the

record as a whole, taking into account evidence favorable as well as unfavorable to the

Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir.1986).

D.     <u>Statement of the Law</u>

An individual who applies for Social Security disability benefits or supplemental

security income must prove their disability.  *See* 20 C.F.R. § 404.1512; 20 C.F.R. §

416.912.  Disability is defined as the "inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §

404.1505(a); 20 C.F.R. § 416.905(a).   The Social Security regulations provide a five-step

sequential evaluation process for determining if a claimant has proven their disability.

See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At the first step, the claimant must prove

that he or she has not engaged in substantial gainful activity.  At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If, however,  the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity[4] and age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th  Cir. 1999); see also  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564

---

[4]  Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

(11th Cir. 1985)).

E.      Analysis.

1.      **The ALJ properly determined that Plaintiff's IBS and obesity were non severe impairments.**

It is well settled that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987), *quoting* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). It is nonetheless the claimant that bears the burden of proving that her impairments are severe. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987)("The Secretary, moreover, has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); McDaniel, 800 F.2d at 1030 (claimant bears the burden of showing that "her impairment is severe within the meaning of the Act."); Stanton v. Apfel, 2000 WL 1005817, *6 (S.D. Ala. July 5, 2000)("the burden of proof is on the Plaintiff to prove that an impairment is severe and more than a mere, slight abnormality.")

As applied to this case, Plaintiff has failed in her burden of showing that her IBS and/or obesity had more than a minimal affect on her ability to work. The mere diagnosis of an impairment is insufficient to establish that the impairment is severe. Sellers v. Barnhart, 247 F.Supp.2d 1201, 1211 (M.D. Ala. 2002)("A diagnosis alone is an

insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality."), *citing* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990)(the proper focus is claimant's functional limitations, not her diagnosis).  Plaintiff must establish that her impairments limit her ability to work.  This, despite her protestations to the contrary, she has not done.  Although Plaintiff testified that she often had to "rush" to the bathroom three to four times a day[5] (Tr. 65-66), she acknowledged that she can always find a bathroom (Tr. 56-57) and no physician's contemporaneous treatment notes reflect any restrictions on Plaintiff's activities or any work-related functional limitations due to IBS or obesity.[6]  *See* Sellers, 246 F.Supp2d at 1211-12 (held that substantial evidence supported the ALJ's

---

[5]Plaintiff argues that the ALJ erred in refusing to allow her testimony to the effect that "she has to rush to the bathroom three to four times a day without advance notice" to be incorporated into her counsel's hypothetical question to the vocational expert.  This contention is without merit.  The ALJ did allow Plaintiff's testimony to be incorporated but did not permit counsel to alter Plaintiff's testimony by limiting the "three to four times **a day"** she testified about to an eight hour work day period rather than the 24 hour period that constitutes **a day**.  *Cf.* Tr. 71-72 with Tr. 78-81.  Consequently, Denson v. Apfel, 2000 WL 1848077 (S.D. Ala. Nov. 9, 2000) is inapposite.  Unlike Denson in which it could not be determined whether the ALJ accepted or rejected the treating physician's opinion regarding claimant's limitations, id at *15, there is no doubt that the ALJ in this case rejected Dr, Tyon's opinion as set forth solely on the Physical Capacities Evaluation form and on the Clinical Assessment of Pain form because it was inconsistent with his own treatment notes as well as the notes of Plaintiff's other physicians.  (Tr. 32-35).

[6]Although Plaintiff did submit the Physical Capacities Evaluation form completed by Dr, Tyon wherein he assessed work-related limitations based on Plaintiff's IBS, the ALJ properly discounted this evidence as inconsistent with Dr. Tyon's treatment notes in which he never assessed or mentioned any work-related or functional limitations.

14

conclusion that plaintiff's impairments were not severe because there where no reports indicating functional limitations for the plaintiff or limitations in his physical abilities). Unlike the claimant in Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir. 1999), who suffered episodic, intermittent and unpredictable fecal incontinence, which often resulted in the soiling of his undergarments, Plaintiff here did not ever report an inability to reach the bathroom in time during those periods when she experienced diarrhea as a result of her IBS.

Plaintiff has failed to identify any objective medical evidence that to suggest that her IBS or obesity, either alone or in combination with her other impairments, significantly impacted her ability to perform the exertional requirements of basic work activity on a sustained basis for an eight hour day.  In addition, Plaintiff neither alleged obesity in her application nor testified that she experienced any limitations as a result of her obesity.  The mere fact that she weighed 299 pounds when she saw Dr. Rochet on December 12, 2007, which may be considered "Morbid Obesity" according to the Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998), does not alter the fact that neither the Plaintiff nor any of her physicians ever state that she experienced any limitation as a result of her obesity that would interfere with her ability to work.[7]  As

---

[7]Consequently, Plaintiff's reliance on Cosey v. Astrue, 2008 WL 2561585 (S.D. Ala. June 25, 2008) is misguided.  Unlike Cosey in which the record contained abundant evidence of the severity of claimant's depression as well as documentation of resulting limitations, no such evidence or notations identifying any functional limitations exists in this case relative to Plaintiff's obesity.

stated previously,"[a] diagnosis alone is an insufficient basis for a finding that an impairment is severe."  Sellers, 247 F.Supp.2d at 1211.  *See also* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)("An individual claiming Social Security disability benefits must prove that she is disabled."); 20 C.F.R. § 404.1512 (it is the claimants' responsibility to present evidence to prove their disability).

In view of Plaintiff's failure to present any objective medical evidence indicating that either her IBS or her obesity limited her physical ability to perform basic work activity, the ALJ reasonably inferred that her IBS and obesity were non-severe impairments.  Enke v. Ribicoff, 197 F.Supp. 319, 324 (S.D. Fla. 1961)(reasonable inferences may be drawn from the record).  Plaintiff identifies no contemporaneous medical records or even testimony to support a different conclusion.  *See* Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985)(per curiam)(Plaintiff bears the burden of demonstrating that the Commissioner's decision is not supported by substantial evidence).

Even if it could be said that the ALJ erred in finding Plaintiff's IBS and obesity to be non-severe impairments, the error would be harmless because the ALJ thoroughly discussed the evidence of all Plaintiff's impairments, including the IBS and obesity in reaching his RFC determination and in questioning the vocational expert.  *See* French v. Astrue, 2008 WL 821838, at *3 (S.D. Ala. March 26, 2008)("[E]ven assuming the ALJ erred in failing to specifically find that plaintiff's chronic foot pain was a severe impairment, such error was harmless since the evidence of record establishes that this condition would not entail any significant work-related limitations of function not

16

contemplated by the ALJ's residual functional capacity determination and the VE's testimony.") *See also* <u>Newsome *ex rel*. Bell v. Barnhart</u>, 444 F.Supp.2d 1195, 1201 (M.D. Ala. 2006)("[T]o the extent that the ALJ erred in failing to make an explicit determination as to whether plaintiff's secondary diagnosis of ODD constituted a severe impairment at step two of the sequential evaluation-the error was harmless. '[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand'.").

2.     **The ALJ's determination regarding Plaintiff's residual functional capacity is supported by substantial evidence.**

"The residual functional capacity ["RFC"] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997), *citing* 20 C.F.R. § 404.1545(a). The responsibility for determining a claimant's RFC lies with the ALJ and is based on **all** of the relevant evidence of record.  <u>Lewis</u>, 125 F.3d at 1440; 20 C.F.R. § 404.1546.  *See also* <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004)("At the fourth step [of the sequential evaluation process, the ALJ . . .  will 'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case.").  In this case, the ALJ concluded that Plaintiff "has the residual functional capacity to perform a wide range of medium work." (Tr. 36, Finding of Fact

No. 5).  Although the Plaintiff disagrees with the ALJ's RFC assessment in this case,[8] her

contemporaneous medical treatment records do not contain any limitations that are more

stringent than those imposed by the ALJ. Plaintiff has, as stated previously, failed to

identify any contemporaneous medical treatment records that are contrary to the ALJ's

RFC assessment.

Plaintiff acknowledges that Dr. Tyon's opinion regarding her physical capacity for

exertional work, which the ALJ discredited, is the only evidence of record regarding her

RFC but then argues that, consequently, there is no evidence from a treating or examining

physician that supports the ALJ's determination.  It is clear, however, that the ALJ gave

careful consideration to the entire record, including each of the treatment notes which

Plaintiff submitted.  While Plaintiff asserts that a physician's RFC assessment is critical,

she has not demonstrated that the ALJ lacked sufficient information to enable him to

make the RFC determination and has not identified any objective treatment records which

even suggests that the ALJ's RFC determination is incorrect.

In Griffin v. Astrue, 2008 WL 4417228, at *10 (S.D. Ala. Sept. 23, 2008)(record

citation omitted) the Court opined, in pertinent part:

> This residual functional capacity is supported by the claimant's treating
> physicians, as well as the absence of functional limitations placed on the
> claimant by any medical source. A review of the ALJ's decision reflects that
> he carefully considered the medical evidence in the record, including the
> treatment notes of Plaintiff's treating physicians, in determining Plaintiff's

---

[8]Plaintiff does not disagree with the ALJ's conclusion that she cannot return to her prior
relevant work. (Tr. 39, Finding of Fact No. 6).

> RFC. While Plaintiff asserts that a physician's RFC assessment was
> required, she has not demonstrated that the ALJ did not have enough
> information to enable him to make a RFC determination, nor has she
> pointed to any medical evidence which suggests that the ALJ's RFC
> assessment is incorrect. As aptly observed by the ALJ, the medical records
> do not evidence any functional limitations and none of Plaintiff's physicians
> limited her activities. The medical records instead demonstrate that while
> Plaintiff has severe impairments, her conditions, such as asthma and
> hypertension, are stable, and are controlled with medication.

Id. at *10 citing Green v. Social Security Administration, 223 Fed. Appx. 915, 2007

U.S.App. LEXIS 10121 (11th Cir. May 2, 2007).

Plaintiff challenges the ALJ's decision to "assign little weight to the [RFC]

opinions offered by Dr. Tyon . . . given that the opinion is inconsistent with the record."

(Tr. 39).  Although Plaintiff argues that the limitations set forth in Dr. Tyon's functional

capacity assessment form "alone limit [Plaintiff] to less than even sedentary work," she

has failed to identify any treatment note by Dr. Tyon or any other treating physician

which is consistent with Dr. Tyon's RFC assessment.

"The ALJ must generally give the opinion of a treating physician "substantial or

considerable weight" absent a showing of good cause not to do so." Newton v. Astrue,

297 Fed.Appx. 880, 883 (11th Cir. 2008).  The ALJ may also devalue the opinion of a

treating physician where the opinion is contradicted by objective medical evidence.

Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir.2003) (per curiam) (citation

omitted).  The Eleventh Circuit has concluded "good cause" exists when a treating

physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when

the treating physician's opinion is inconsistent with his or her own medical records.

Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.2004). If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. Id.

In this case, Dr. Tyon's treatment notes (Tr. 326-28, 330, 332), contain minimal objective findings, no diagnostic testing, and do not include any restrictions or functional limitations.  *See*, Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006)(The ALJ was permitted to disregard a treating physician's opinion regarding limitations, when no limitations were stated in the physician's treatment notes and thus amounted to a "conclusory statement unsupported by the objective medical evidence.").  The lack of objective findings does not support the extreme limitations in Dr. Tyon's opinion and indeed underscores the inconsistency between his treatment notes and his opinion.  *See*, Phillips, 357 F.3d at 1240 (good cause exists when "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").  The court finds that there existed "good cause" to discount Dr. Tyon's RFC opinion.  Id. ("This Court has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").  *See also*, Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159-60 (11th Cir. 2004)(good cause was shown to discount treating physicians' opinions when they were "not accompanied by objective medical evidence or [] wholly conclusory.").  For these reasons, the undersigned finds that the ALJ properly determined to discredit Dr.

20

Tyon's opinion.

3.     **The ALJ properly determined Plaintiff's mental residual functional capacity**.

Plaintiff also assigns error to the ALJ's determination of Plaintiff's mental RFC. The court finds that the ALJ's determination was properly based upon his consideration of the entire record, which he discussed at length, and, as required by pertinent regulations and the applicable law, the ALJ rated Plaintiff's mental functional limitations in the areas of daily living activities, social functioning, concentration, and episodes of decompensation.  (Tr. 35-36).  *See*, Moore, *supra*, 405 F.3d at 12 14 ("Agency regulations require the ALJ to use the "special technique" [which includes] separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."), *citing* 20 C.F.R. § 404.1520a.

Plaintiff's contention that the ALJ relied solely on the opinion of a non-examining, reviewing State Agency physician, M. Hope Jackson, Ph.D., is incorrect.  The ALJ merely stated that he concurred with Dr. Jackson's opinion but then referred to all of the evidence of record and discussed that evidence at length, including the evidence that the Plaintiff has been able to care for her own personal needs without assistance; has been able to care for her two small children; and has been able to take a month long trip with her children to Washington to visit relatives.  (Tr. 38).  The ALJ also relied upon the evidence that the Plaintiff sought no mental health treatment other than meeting with Dr.

21

Tyon for 1-hour sessions on only three occasions and that, when she was compliant with her prescribed medical regimen, her condition substantially improved.  *See* <u>Richardson v. Perales</u>, 402 U.S. 389, 408 (1971)(the opinion of a non-examining medical expert did not differ from the medical reports and his use was, therefore, proper).

Dr. Jackson's opinion regarding Plaintiff's mental functional limitations was consistent with the clinical and diagnostic findings in the contemporaneous treatment notes of all the physicians who examined her.  In fact, no mental functional restrictions were assessed by any examining physician in their contemporaneous treatment notes, including Dr. Tyon.  Moreover, Drs. Brown and Rochet noted that Plaintiff's mental impairments were controlled with medication (Tr. 305, 321-22) and Dr. Williams specifically indicated that Plaintiff's condition would have a favorable response with psychotherapy treatment (Tr. 270), indicating that Plaintiff's mental limitations were not as severe as indicated by Dr. Tyon.  *See* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988)(a medical condition that can be remedied by surgery, treatment, or medication is not disabling).

Generally, a non-examining physician's opinion is accorded little weight if it contradicts an examining physician's report and such report, standing alone, cannot constitute substantial evidence.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 (11th Cir. 1991). This case is, however, distinguishable from <u>Edwards</u>.  Dr. Jackson's opinion was consistent with the contemporaneous treatment notes of all of Plaintiff's examining physicians.  The ALJ did not, therefore, err in relying on Dr. Jackson's opinion.  937 F.2d

22

at 584-85 (Alj did not err in relying on the opinion of a non-examining physician where the opinion was consistent with the opinions of the examining physicians.).[9]

V.   Conclusion.

For the reasons stated above, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be **AFFIRMED**.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**Done** this 9th day of September, 2009.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

_____

[9]In Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991), the Eleventh Circuit found that, because the non-examining physician provided an interpretation of the Claimant's condition which constituted information "not contained in either [treating physicians'] reports," it could not be said that the non-examining physician's report contradicted the treating physicians' reports.  The Eleventh Circuit held, therefore, that "the ALJ did not err in relying on the [non-examining physician's] report."  *Id.*

23

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        **Done** this 9th day of September, 2009.

                           /s/ Katherine P. Nelson
                           UNITED STATES MAGISTRATE JUDGE

24